Filed 2/23/15  P. v. Jacaline CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040045 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1231928) |
| v. | |
| EDWARD TRABOCO JACALNE, | |
| Defendant and Appellant. | |

## I.     INTRODUCTION

Defendant Edward Traboco Jacalne was placed on probation for three years after he pleaded no contest to possessing matter depicting a person under the age of 18 engaging in sexual conduct.  (Pen. Code, § 311.11, subd. (a).)[1]

The trial court imposed the probation condition mandated by section 1203.067, subdivision (b)(3), which requires defendant to "waive any privilege against self-incrimination and participate in polygraph examinations, which shall be part of the sex offender management program" (condition No. 2).  The trial court also imposed a probation condition barring defendant from purchasing or possessing "any pornographic or sexually explicit material as defined by the probation officer" (condition No. 15) and a probation condition barring defendant from cleaning or deleting "Internet browsing

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

activity" and requiring him to "keep a minimum of four weeks of history" (condition No. 18).

On appeal, defendant challenges the three probation conditions referenced above. He claims the condition required by section 1203.067, subdivision (b)(3) violates his constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution, and that the condition is unreasonable and overbroad. He also claims that condition No. 15 is unconstitutionally vague and that condition Nos. 15 and 18 both require a knowledge element. The Attorney General concedes that condition Nos. 15 and 18 should be modified to include a knowledge element. We will modify conditions Nos. 15 and 18 and affirm the judgment as modified.

## II.    BACKGROUND

After being found with child pornography on his computer, defendant was charged with possessing matter depicting a person under the age of 18 engaging in sexual conduct. (§ 311.11, subd. (a).) On March 4, 2013, he pleaded no contest to that charge.

Defendant subsequently filed a motion to reduce his conviction to a misdemeanor pursuant to section 17, subdivision (b), and he filed written challenges to a number of probation conditions, including the conditions required by section 1203.067, subdivisions (b)(3) and (b)(4).

At the sentencing hearing held on August 7, 2013, the trial court granted defendant's section 17, subdivision (b) motion and placed him on probation for three years. The trial court imposed the probation conditions required by section 1203.067, subdivisions (b)(3) and (b)(4) over defendant's objection, stating, "I believe they serve an appropriate probation and supervision purpose."[2] The trial court also imposed condition

---

[2] Defendant's attorney subsequently filed a written request to be present at all polygraph examinations and to have copies of all polygraph questions prior to any polygraph examination.

2

No. 15, barring defendant from purchasing or possessing "any pornographic or sexually explicit material as defined by the probation officer," and condition No. 18, barring defendant from cleaning or deleting "Internet browsing activity" and requiring him to "keep a minimum of four weeks of history."

## III.     DISCUSSION

We begin by setting forth some of the legal principles applicable to defendant's challenges to the probation conditions imposed on him.

"In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1. [Citations.] 'The court may impose and require . . . [such] reasonable conditions[ ] as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer.' [Citation.] The trial court's discretion, although broad, nevertheless is not without limits: a condition of probation must serve a purpose specified in the statute. In addition, we have interpreted Penal Code section 1203.1 to require that probation conditions which regulate conduct 'not itself criminal' be 'reasonably related to the crime of which the defendant was convicted or to future criminality.' [Citation.] As with any exercise of discretion, the sentencing court violates this standard when its determination is arbitrary or capricious or ' " 'exceeds the bounds of reason, all of the circumstances being considered.' " [Citations.]' [Citation.]" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120-1121.)

Probation conditions may be challenged on the grounds of unconstitutional vagueness and overbreadth. (*People v. Lopez* (1998) 66 Cal.App.4th 615, 630.) "[W]here an otherwise valid condition of probation impinges on constitutional rights, such conditions must be carefully tailored, ' "reasonably related to the compelling state

3

interest in reformation and rehabilitation . . . ." ' [Citations.]" (*People v. Bauer* (1989) 211 Cal.App.3d 937, 942.)

" 'A statute or regulation is overbroad if it "does not aim specifically at evils within the allowable area of [governmental] control, but . . . sweeps within its ambit other activities that in the ordinary circumstances constitute an exercise" of protected expression and conduct.' [Citations.]" (*People v. Leon* (2010) 181 Cal.App.4th 943, 951.) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

In examining whether a probation condition is void for vagueness, courts have considered whether the condition is " 'sufficiently precise for the probationer to know what is required of him [or her]. . . .' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.) "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' " (*Ibid.*) That is, the defendant must know in advance when he or she may be in violation of the condition.

With the above principles in mind, we examine each of the conditions challenged here.

### A.     *Waiver of Privilege Against Self-Incrimination (Condition No. 2)*

As required by section 1203.067, subdivision (b)(3), defendant was ordered, as a condition of probation, to "waive any privilege against self-incrimination and participate in polygraph examinations, which shall be part of the sex offender management program." (Condition No. 2.)

#### 1.     Constitutional Challenge

Defendant first contends the probation condition required by section 120.067, subdivision (b)(3) violates the Fifth Amendment to the extent it requires him to waive

any privilege against self-incrimination.[3]  He relies largely on *Minnesota v. Murphy* (1984) 465 U.S. 420 (*Murphy*).

In *Murphy,* the defendant was subject to a probation condition requiring that he participate in a treatment program for sexual offenders, report to his probation officer as directed, and be truthful with the probation officer " 'in all matters.' " (*Murphy, supra,* 465 U.S. at p. 422.)  In his treatment program, the defendant admitted a prior rape and murder.  (*Id.* at p. 423.)  Those admissions were communicated to the probation officer, who questioned the defendant.  The defendant admitted the crimes to the probation officer, and criminal charges were filed as a result.  The defendant then sought to suppress his admissions on the ground that his statements had been compelled by the probation condition.  (*Id.* at pp. 424-425.)

The United States Supreme Court emphasized that in general, the Fifth Amendment is not self-executing:  "a witness . . . ordinarily must assert the privilege rather than answer if he [or she] desires not to incriminate himself [or herself]." (*Murphy, supra,* 465 U.S. at p. 429.)  The probation condition in *Murphy* required the defendant only to be truthful, and thus the defendant still could have claimed the privilege against self-incrimination.  (*Id.* at pp. 436-437.)  The *Murphy* court considered whether there were any applicable exceptions to the general rule that the Fifth Amendment is not self-executing.  (*Id.* at p. 429.)  In particular, the court considered whether to excuse the defendant's failure to assert the privilege against self-incrimination on the basis of the "so-called 'penalty' " exception.  (*Id.* at p. 434.)

---

[3] The Supreme Court is currently considering the constitutionality of the conditions of probation mandated by section 1203.067, subdivision (b), for persons convicted of specified felony sex offenses.  (See *People v. Klatt* (2014) 225 Cal.App.4th 906, review granted July 16, 2014, S218755; *People v. Friday* (2014) 225 Cal.App.4th 8, review granted July 16, 2014, S218288; *People v. Garcia* (2014) 224 Cal.App.4th 1283, review granted July 16, 2014, S218197.)

The penalty exception had been applied in cases where "the State not only compelled an individual to appear and testify, but also sought to induce him [or her] to forego the Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.' [Citation.]" (*Murphy, supra,* 465 U.S. at p. 434.) In *Murphy,* there was no evidence that the defendant would have been penalized for exercising his Fifth Amendment privilege. (*Id.* at pp. 437-438.) The probation condition itself "proscribed only false statements; it said nothing about his freedom to decline to answer particular questions and certainly contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege with respect to further criminal prosecution." (*Id.* at p. 437.) Further, there was "no direct evidence that Murphy confessed because he feared that his probation would be revoked if he remained silent." (*Ibid.*)

The *Murphy* court explained how the penalty exception could apply to a probationer: "if the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." (*Murphy, supra,* 465 U.S. at p. 435, fn. omitted.) However, the court noted, "a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination." (*Ibid.,* fn. 7.)

As applied to this case, *Murphy* establishes that defendant's Fifth Amendment rights are not violated by the probation condition requiring him to waive the privilege against self-incrimination as to questions asked during the sex offender management program. The state has, "by implication, assert[ed] that invocation of the privilege" in response to such incriminating questions "would lead to revocation" of probation. (See

*Murphy, supra,* 465 U.S. at p. 435.) Thus, if defendant makes any statements in response to questions posed to him during the sex offender management program, those statements will be deemed compelled under the Fifth Amendment and thus involuntary and inadmissible in a criminal prosecution. (*Ibid.*) Since such statements will necessarily fall within the penalty exception, they will not be available for use at a criminal prosecution, and defendant's Fifth Amendment rights have not been violated. (See *Chavez v. Martinez* (2003) 538 U.S. 760, 769 (*Chavez*) [plur. opn. of Thomas, J.] [the Fifth Amendment is not violated "absent use of the compelled statements in a criminal case against the witness"]; *id.* at p. 777 [conc. opn. of Souter, J.].)

Defendant also cites to *United States v. Saechao* (9th Cir. 2005) 418 F.3d 1073 (*Saechao*). However, *Saechao* does not advance defendant's contention because that case was concerned with the *admissibility* of a defendant's statements *in a criminal prosecution*. No such contention is at issue here. Defendant has not made any statements, and no one is seeking to introduce any statements against him in a criminal prosecution. For the same reason, defendant's claim is not supported by either *People v. Quinn* (1964) 61 Cal.2d 551 or *People v. Goodner* (1992) 7 Cal.App.4th 1324, as both cases addressed the admission of a defendant's statements at trial.

Defendant also relies on the Arizona Supreme Court's decision in *State v. Eccles* (Ariz. 1994) 179 Ariz. 226 (*Eccles*) to support his claim. In *Eccles*, the trial court had imposed as a condition of probation that the defendant "waive any and all rights against [self-incrimination]." (*Id.* at p. 227.) The probationer challenged the probation condition itself as violative of the Fifth Amendment, and the Arizona Supreme Court agreed. It reasoned: "Not only is the state prohibited from revoking probation for a legitimate invocation of the privilege against self-incrimination, we perceive the import of the *Murphy* decision as being that the state is also prohibited from making waiver of the privilege a term of probation." (*Id.* at p. 228.) "The state may not force defendant to choose between incriminating himself and losing his probationary status by remaining

7

silent. The fact that defendant has not yet been presented with the dilemma of either incriminating himself or jeopardizing his probation does not affect our decision." (*Ibid.*)

The Arizona Supreme Court's holding in *Eccles*—that a probation condition authorizing extraction of compelled statements itself violates the Fifth Amendment—conflicts with authority from our Supreme Court.

In *Maldonado v. Superior Court* (2012) 53 Cal.4th 1112 (*Maldonado*), the California Supreme Court rejected the defendant's claim that the Fifth Amendment provided "a guarantee against officially compelled *disclosure* of potentially self-incriminating information." (*Id.* at p. 1127.) The *Maldonado* court based its holding on the rule that the Fifth Amendment applies only to *use* of a defendant's incriminating statements; the Fifth Amendment does not bar the government from compelling those statements. (*Id.* at pp. 1134, 1137.)

The California Supreme Court's decision in *Maldonado* relied on the United States Supreme Court's decision in *Chavez, supra,* 538 U.S. 760. *Chavez* was a civil action involving qualified immunity. The issue was whether a police officer who allegedly compelled statements from the plaintiff could be held liable for violating the plaintiff's civil rights. The plaintiff claimed that the police officer had violated the Fifth Amendment. The United States Supreme Court produced a plurality opinion and multiple separate opinions rejecting the plaintiff's theory. Justice Thomas wrote the lead opinion. In a section of his opinion joined by three other justices, Justice Thomas stated that compelled statements "of course may not be used against a defendant at trial, [citation], but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs." (*Id.* at p. 767.) "[M]ere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness." (*Id.* at p. 769.) Writing separately, Justice Souter acknowledged that it would be "well outside the core of Fifth Amendment protection" to find that "questioning alone" was a "completed violation" of the Fifth Amendment and

declined to extend the Fifth Amendment to such a claim. (*Id.* at p. 777.) Thus, five justices held in *Chavez* that the Fifth Amendment is not violated by the extraction of compelled statements.

We are bound by *Maldonado* and *Chavez* (see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), and they hold that the mere extraction of compelled statements does not violate the Fifth Amendment. Since the challenged probation condition does not purport to authorize the *use* of any statements against defendant in a criminal proceeding, it does not violate the Fifth Amendment.

Finally, defendant contends that the probation condition violates his Fifth Amendment rights because the Post-Conviction Sex Offender Polygraph Certification Standards, promulgated by the California Sex Offender Management Board, instruct polygraph examiners to ask a number of questions related to potentially uncharged offenses during polygraph tests. (See Cal. Sex Offender Management Bd., Post-Conviction Sex Offender Polygraph Standards at pp. 10-23.)[4]

Defendant relies on *United States v. Antelope* (9th Cir. 2005) 395 F.3d 1128 (*Antelope*) for the proposition that "[s]ubmission to a polygraph examination that requires investigation and disclosure of uncharged offenses violates the Fifth Amendment." In *Antelope,* the defendant objected on Fifth Amendment grounds to probation conditions requiring him to participate in a sex abuse treatment program and submit to polygraph examinations. During the polygraph examinations, he refused to "reveal his full sexual history." (*Id.* at p. 1132.) His probation was revoked, and he was incarcerated. The Ninth Circuit concluded that the defendant's claim was "ripe" because he had been incarcerated for his refusal to comply with the condition. (*Id.* at pp. 1132-1133.) The court further concluded that revoking the defendant's probation and incarcerating him for

_____

[4] The Post-Conviction Sex Offender Polygraph Standards are available at http://www.casomb.org/docs/certification_standards/polygraph_standards.pdf [as of February 19, 2015].

9

invoking his Fifth Amendment rights violated the Fifth Amendment. (*Id*. at pp. 1134-1140.)

*Antelope* is not relevant here. Defendant is making a facial challenge to the probation condition; he has not been subjected to any sanction for refusing to comply with it. We do not have before us in this case the issue of whether defendant may have his probation revoked for refusing to comply with this condition.

In sum, because the penalty exception will necessarily apply to statements that defendant makes in response to questions asked as part of the sex offender management program under compulsion of the section 1203.067, subdivision (b)(3) probation condition, and because defendant has not been sanctioned for refusing to comply with the probation condition, defendant's Fifth Amendment challenge to the condition fails.

### 2. Reasonableness Challenge

Defendant alternatively contends the probation condition required by section 1203.067, subdivision (b)(3) should be stricken as unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*).

Under *Lent*, a condition of probation will be held invalid if it " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]" (*Lent, supra,* 15 Cal.3d at p. 486, fn. omitted.) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. [Citations.] As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long the condition is reasonably related to preventing future criminality." (*People v. Olguin* (2008) 45 Cal.4th 375, 379-380.)

The primary purpose of the sex offender management program, which sex offenders like defendant are statutorily required to complete as a condition of probation,

is to prevent the probationer from committing sexual offenses in the future. (§ 9000, subd. (d).) The program is "designed to address the multiple psychological and physiological factors found to be associated with sexual offending." (§ 9000, subd. (c).) The trial court could have reasonably concluded that, without defendant's full disclosure of the circumstances of all of his or her prior offenses, the program would not be able to identify the "psychological and physiological factors" that were "associated with [his or her] sexual offending." The program would then have no hope of providing the treatment necessary to reform and rehabilitate defendant in order to prevent him or her from repeating this pattern and committing future offenses. Since full disclosure is necessary to identify these factors, and identification of these factors is critical to the success of the treatment program, which is aimed at preventing future sex offenses, the section 1203.067, subdivision (b)(3) condition is reasonably related to defendant's future criminality. (See *People v. Miller* (1989) 208 Cal.App.3d 1311, 1314-1315, [upholding polygraph examination requirement as reasonably related to ensuring that sex offender complied with a condition barring defendant from being alone with young females]; *Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 319 [polygraph examinations would aid in ensuring the defendant completed his stalking treatment program].)

### 3. Overbreadth

Defendant argues that the section 1203.067, subdivision (b)(3) probation condition requires him to answer questions about any topic, even questions that do not relate to the sex offender management program. He contends that this renders the condition not only unreasonable under *Lent,* but also unconstitutionally overbroad.

In interpreting the scope of the probation condition mandated by section 1203.067, subdivision (b)(3), we must apply settled rules of statutory construction. " ' "The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. [Citation.] Ordinarily, the words of the statute provide the most reliable indication of

11

legislative intent.  [Citation.]  When the statutory language is ambiguous, the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes.  [Citations.]"  [Citation.] " 'When the language is susceptible of more than one reasonable interpretation . . . , we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' " [Citation.]'  [Citations.]"  (*People v. Kennedy* (2011) 194 Cal.App.4th 1484, 1490-1491.) Further, we must construe a statute in a manner that ensures its constitutionality, if possible.  (See *People v. Lowery* (2011) 52 Cal.4th 419, 427.)

Here, the plain language of the statute indicates that the waiver of the privilege against self-incrimination applies only to statements made in response to questions asked as "part of the sex offender management program."  (§ 1203.067, subdivision (b)(3).) The compound subject "[w]aiver of any privilege against self-incrimination and participation in polygraph examinations" is modified by the phrase "which shall be part of the sex offender management program."  (*Ibid.*)  Thus, the plain language of the statute indicates a waiver of the privilege against self-incrimination is required only as "part of the sex offender management program."  (*Ibid.*)

In light of the overall statutory scheme and the legislative history of section 1203.067, to the extent there is any ambiguity in the language of the statute, we conclude the Legislature intended to require that probationers waive the privilege against self-incrimination only in the context of the sex offender management program. Section 1203.067, subdivision (b) applies to probationers who are also required to register as sex offenders under section 290, and the Legislature has previously recognized that those persons are " 'likely to commit similar offenses in the future. [Citation.]'  [Citations.]"  (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527.)  Thus, in enacting section 1203.067, subdivision (b), the Legislature recognized that it is

12

appropriate to grant probation to a sex offender only if the risks can be managed, and that participation in a sex offender management program will help manage those risks. Since the Legislature's intent was to manage the risk of recidivism posed by sex offenders by compelling their participation in a sex offender management program, there is no basis for construing the statute as mandating a "[w]aiver of any privilege against self-incrimination and participation in polygraph examinations" as to questions asked for any purpose other than as "part of the sex offender management program." (§ 1203.067, subdivision (b)(3).)

As the probation condition requires polygraph examinations to be used only in furtherance of a probationer's treatment, and thus requires that the questions asked be relevant to that treatment, defendant's claim that the condition is overbroad fails.

### B.     *Condition No. 15*

Condition No. 15 bars defendant from purchasing or possessing "any pornographic or sexually explicit material as defined by the probation officer." Defendant challenges this condition as unconstitutionally vague, arguing that the condition fails to provide him advance notice of what materials are prohibited and that the condition should either be stricken or modified to include a knowledge element. The Attorney General disputes that the condition is vague but concedes that the condition should be modified to include a knowledge requirement.

"[T]he law has no legitimate interest in punishing an innocent citizen who has no knowledge of the presence of a [prohibited item]." (*People v. Freitas* (2009) 179 Cal.App.4th 747, 752 [modifying probation condition to prohibit knowing possession of a firearm or ammunition].) Accordingly, courts have consistently ordered modification of probation conditions to incorporate a scienter requirement where a probationer could unknowingly engage in the prohibited activity. (E.g., *In re Victor L.* (2010) 182 Cal.App.4th 902, 912-913 [modifying probation condition to prohibit knowing presence of weapons or ammunition].)

13

In *People v. Pirali* (2013) 217 Cal.App.4th 1341 (*Pirali*), this court modified a probation condition that prohibited the defendant from purchasing or possessing pornographic or sexually explicit materials as defined by the probation officer. This court explained, "Materials deemed explicit or pornographic, as defined by the probation officer, is an inherently subjective standard that would not provide defendant with sufficient notice of what items are prohibited." (*Id.* at p. 1353.) This court modified the condition to state that the defendant was "prohibited from purchasing or possessing pornography or sexually explicit materials, having been informed by the probation officer that such items are pornographic or sexually explicit." (*Ibid.*)

Following the rationale of *Pirali,* we will modify condition No. 15 to include an express knowledge requirement and to delete the phrase "as defined by the probation officer." In his opening brief, defendant suggests we modify the condition to provide "the defendant shall not knowingly purchase or possess any pornographic or sexually explicit material." The Attorney General suggests we modify the condition to provide as follows: "The defendant shall not knowingly purchase or possess any materials which he knows or reasonably should know contain pornographic or sexually explicit material, except with the express permission of his probation officer." In his reply brief, defendant suggests we modify the condition consistent with the modification in *Pirali*.

We believe that the condition will give defendant fair notice of what materials he may not possess if it is modified to provide as follows: "The defendant shall not purchase or possess any material he knows or reasonably should know to be pornographic or sexually explicit."

### C. Condition No. 18

Condition No. 18 bars defendant from cleaning or deleting "Internet browsing activity" and requires him to "keep a minimum of four weeks of history." Defendant contends this condition requires a knowledge element because it is possible to accidentally erase browsing history from a computer. The Attorney General agrees that

14

adding a knowledge element would avoid defendant's probation being revoked for such an accident.  We will therefore modify the condition to provide:  "The defendant shall not knowingly clean or delete Internet browsing activity and must keep a minimum of four weeks of history."

## IV.    DISPOSITION

Condition No. 15 is modified to read as follows:  "The defendant shall not purchase or possess any material he knows or reasonably should know to be pornographic or sexually explicit."

Condition No. 18 is modified to read as follows:  "The defendant shall not knowingly clean or delete Internet browsing activity and must keep a minimum of four weeks of history."

As modified, the judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

I CONCUR:


_____
MIHARA, J.

**GROVER, J., Concurring and Dissenting.**

I concur in the majority opinion regarding defendant's challenge to probation condition No. 15, prohibiting defendant from purchasing or possessing pornographic material, and condition No. 18, requiring defendant to preserve his internet browsing activity. I respectfully disagree, however, with the majority's analysis and conclusions in Section III.A regarding the requirements imposed under Penal Code section 1203.067, subdivision (b)(3) that defendant waive his Fifth Amendment privilege against self-incrimination and participate in polygraph examinations as part of a sex offender management program. As I explain below, I find the Fifth Amendment waiver required by that subdivision to be invalid on its face. I would uphold the condition that defendant participate in polygraph examinations, provided the condition is construed narrowly to conform with *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*).

## I. FIFTH AMENDMENT WAIVER

### A. Defendant's Challenge is Timely

Penal Code section 1203.067, subdivision (b)(3) requires defendant, as a condition of probation, to waive his privilege against self-incrimination.[1] Defendant argues that this statutory waiver is facially unconstitutional because it creates an "impermissible penalty situation" described in *Murphy v. Minnesota* (1984) 465 U.S. 420 (*Murphy*). Based on *Chavez v. Martinez* (2003) 538 U.S. 760 (*Chavez*) and *Maldonado v. Superior Court* (2012) 53 Cal.4th 1112 (*Maldonado*), the majority concludes that the Fifth

---

[1] Penal Code section 1203.067, subdivision (b)(3) (hereafter sometimes referred to as subdivision (b)(3)) requires a "[w]aiver of any privilege of self-incrimination and participation in polygraph examinations, which shall be part of the sex offender management program." I note that subdivision (b)(3) is ambiguous because the phrase "[w]aiver of any privilege against self-incrimination" can be read as applying only to "polygraph examinations" or more broadly to "the sex offender management program." While it is unnecessary to resolve this statutory ambiguity because I find the provision unconstitutional under either construction, my opinion refers to the waiver as applied in the broader sense to defendant's participation in the sex offender management program.

Amendment is violated only when a compelled statement is used against a defendant in a criminal proceeding; thus, the majority effectively treats defendant's Fifth Amendment challenge as unripe because defendant has made no disclosure sought to be used against him.

Defendant's facial challenge to the waiver requirement is proper because it prevents him from asserting his Fifth Amendment privilege in connection with the sex offender management program mandated as a condition of his probation. The Fifth Amendment does more than permit a defendant to refuse to testify in a criminal trial. (*Murphy*, *supra*, 465 U.S. at p. 426.) It also " 'privileges [a person] not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.' [Citation.]." (*Ibid; Kastigar v. United States* (1972) 406 U.S. 441, 444–445 [the privilege "can be asserted in any proceeding … and it protects against any disclosures which the witness reasonably believes could be" incriminating].) The privilege extends to answering questions posed by probation officers (*Murphy*, at p. 426) and polygraph examiners (*People v. Miller* (1989) 208 Cal.App.3d 1311, 1315; *Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 321). Defendant asserts that he cannot be required as a condition of probation to waive his right to assert the privilege and remain silent.

Orders granting probation are appealable under Penal Code section 1237, subdivision (b) as post-judgment orders affecting the substantial rights of a defendant. (*In re Bine* (1957) 47 Cal.2d 814, 817.) A defendant who accepts the terms of probation "may seek relief from the restraint of any alleged invalid condition of probation on appeal from the order granting probation[.]" (*In re Bushman* (1970) 1 Cal.3d 767, 776.) Defendant's challenge is therefore properly before this court as a challenge to an invalid probation condition. It would be inconsistent with Penal Code section 1237 to force defendant either to violate his probation terms by disregarding the waiver or to comply with the waiver and forego asserting a right to remain silent before allowing him to

2

challenge the waiver as unlawful. It is also inconsistent with the well-established practice of reviewing probation conditions for constitutional infirmity before any revocation occurs. (*In re Sheena K.* (2007) 40 Cal.4th 875.)

*Chavez* and *Maldonado* do not support the view that defendant's Fifth Amendment claim is not actionable. In *Chavez*, a federal civil rights action brought under Title 42 U.S.C section 1983, the plaintiff was questioned by a parole officer without *Miranda* warnings while receiving medical treatment for gunshot wounds following an altercation with police officers. Plaintiff alleged that the emergency room questioning violated both his Fifth and Fourteenth Amendment rights. (*Chavez*, *supra*, 538 U.S. at p. 765.) The Ninth Circuit upheld the denial of qualified immunity to the parole officer, concluding that the " 'right to be free from coercive interrogation' " was clearly established under both the Fifth and Fourteenth Amendments. (*Id*. at pp. 765–766.) The Supreme Court reversed, concluding that the plaintiff could not allege a Fifth Amendment violation because he "was never prosecuted for the crime, let alone compelled to be a witness against himself in a criminal case." (*Id*. at p. 766.) The court reasoned that the text of the Fifth Amendment "cannot support the Ninth Circuit's view that the mere use of compulsive questioning, without more, violates the Constitution." (*Id*. at p. 767.)

In *Maldonado*, the criminal defendant asserted a mental-state defense. Pursuant to Penal Code section 1054 (providing for reciprocal discovery), the prosecution obtained a court order requiring the defendant to submit to a mental examination by prosecution-selected experts, and a disagreement arose regarding the disclosure of the examination results to the prosecution. (*Maldonado*, *supra*, 53 Cal.4th at p. 1118.) Relying in part on *Chavez*'s focus that a " 'core' Fifth Amendment violation is completed, not merely by official extraction of self-incriminatory answers from one who has not waived the privilege, but only if and when those answers *are used in a criminal proceeding* against the person who gave them" (*id.* at p. 1128, citing *Chavez, supra*, pp. 766–773), the

3

California Supreme Court concluded that release of the examination results to the prosecution before the defendant actually presented his defense at trial was not precluded by the Fifth Amendment. (*Maldonado*, at p. 1141.)

I do not read *Chavez* and *Maldonado* as standing for the proposition that a probationer may not challenge probation conditions under the Fifth Amendment until a compelled statement is used against him in a criminal proceeding. While both cases recognize that merely eliciting an incriminating statement does not violate the Fifth Amendment, neither case precludes immediate review of the issue presented here: whether the state can condition probation on waiving the right to remain silent when confronted with potentially incriminating questions.

**B.     The Waiver Unconstitutionally Infringes on the Privilege Against Self-Incrimination**

Penal Code section 1203.067, subdivision (b)(3) requires the waiver of "any privilege against self-incrimination" while participating in the sex offender management program. As discussed above, the privilege includes more than a defendant's right to remain silent at a criminal proceeding. It also embodies the right to refuse to answer potentially incriminating questions in informal settings, including in the probation context. Indeed, no one disputes that, absent the subdivision (b)(3) waiver, defendant could assert his Fifth Amendment privilege and elect not to provide incriminating information as part of the sex offender management program. Defendant contends that any impingement on this right as a condition of probation is an unlawful penalty under *Murphy*.

Because the Fifth Amendment speaks of compulsion, as a general rule a person must invoke the privilege by refusing to answer incriminating questions. The privilege is not self-executing and must be claimed. Otherwise, the incriminating answers will be deemed voluntary and not protected by the privilege. (*Murphy*, *supra*, 465 U.S. at p. 427.) But an exception exists "where the assertion of the privilege is penalized so as to

4

'foreclos[e] a free choice to remain silent, and … compe[l] … incriminating testimony.' [Citation]." (*Id.* at p. 434.) In such a situation, the privilege need not be asserted but instead is considered self-executing because the disclosure is deemed compelled by the threat of penalty. (*Ibid.*) Under this "penalty exception," if a person incriminates himself under threat of a penalty for the refusal to answer, the statement is deemed compelled and cannot be used against the person in a criminal proceeding. (*Ibid.*) Conversely, if a penalty is imposed on a person for exercising the right to remain silent, courts have struck the penalty as violating the Fifth Amendment. For example, in *Lefkowitz v. Turley* (1973) 414 U.S. 70, after refusing to testify before a grand jury, two contractors were disqualified under state law from entering into contracts with public authorities for five years. The Supreme Court found the law violated the Fifth Amendment because it attached a penalty to an individual's assertion of the right to remain silent.

In *Murphy*, the Supreme Court addressed whether a probationer's incriminating statements to his probation officer were made under threat of penalty, thereby requiring their suppression at a criminal trial. The defendant in *Murphy* admitted to his probation officer that he committed a rape and murder occurring several years before the offense for which he was on probation, and that admission resulted in first degree murder charges. (*Murphy*, *supra*, 465 U.S. at p. 425.) At trial, Murphy challenged the admission of the incriminating statement made to his probation officer. Invoking the penalty exception, Murphy argued unsuccessfully that a probation condition requiring that he be truthful with his probation officer in all matters coerced him to admit the rape and murder to his probation officer. (*Id.* at pp. 434–439.) Although the court concluded that Murphy's statements were not compelled and were therefore voluntary and admissible in his criminal trial, I agree with defendant that the application of *Murphy* to the probation condition in this case demands a different result.

*Murphy* formulated a test in determining whether the condition requiring the probationer to speak truthfully constituted a "threat of punishment for reliance on the

5

privilege." (*Murphy*, *supra*, 465 U.S. at p. 435.)  *Murphy* recognized that the state "may require a probationer to appear and discuss matters that affect his probationary status[,]" and that such a requirement, without more, is no different than the state compelling an individual to appear and testify.  In both cases, the witness and the probationer are required to answer unless the questions call for incriminating answers.  (*Ibid*.)  *Murphy* then determined that revocation of probation qualifies as a penalty:  "[I]f the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation[.]"  (*Ibid*.)  In such case, the court explained, the state can insist on answers to incriminating questions "and hence sensibly administer its probation system" provided it eliminates the threat of incrimination.  (*Id*. at p. 435, fn. 7.)

With these principles in mind, the court framed its inquiry as whether "Murphy's probation conditions merely required him to appear and give testimony about matters relevant to his probationary status or whether they went further and required him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." (*Murphy*, *supra*, 465 U.S. at p. 436.)  The court concluded that the condition requiring Murphy to be truthful with his probation officer in all matters did not rise to a threat of revocation.  Indeed, the condition "said nothing about his freedom to decline to answer particular questions and certainly *contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege* with respect to further criminal prosecution."  (*Id*. at p. 437.  Italics added.)  The probation condition did not "attach an impermissible penalty to the exercise of the privilege against self-incrimination" (*ibid*.) because it did not require Murphy to choose between incriminating himself and jeopardizing his probation by remaining silent.  In contrast, Penal Code section 1203.067, subdivision (b)(3) requires that the privilege against self-incrimination be waived in order to be granted probation under that section.

Application of the *Murphy* test here compels the conclusion that the challenged waiver is unconstitutional precisely because it does impose an impermissible choice between self-incrimination and conditional liberty. This conclusion is consistent with other jurisdictions' treatment of the penalty exception in the context of probation conditions.

In *State v. Eccles* (1994) 179 Ariz. 226 (*Eccles*), the Arizona Supreme Court was presented with a waiver nearly identical to that required under subdivision (b)(3). The Arizona probation condition required the defendant, as part of a sex offender treatment program, to waive his rights against self-incrimination and answer truthfully any questions posed by treatment program agents including his probation officer and polygraph examiner. (*Eccles*, at p. 227.) Applying *Murphy*, *Eccles* held that the condition "plainly took the 'extra impermissible step' by attempting to require defendant to waive his right against self-incrimination under penalty of having his probation revoked." (*Id.* at p. 228, quoting *Murphy*, *supra*, at p. 436.) *Eccles* read *Murphy*'s prohibition against a state revoking probation for a legitimate exercise of the Fifth Amendment privilege as also proscribing a state from imposing a waiver of the privilege as a condition of probation. (*Eccles*, at p. 228.)

In *State v. Gaither* (2004) 196 Or. App. 131, the Oregon Court of Appeal also determined that a probationer's statement was involuntary under *Murphy*. The sex-offender probationer in *Gaither* was required to " 'promptly and truthfully answer all reasonable inquiries' of his probation officer," fully disclose his sexual history, and identify all victims of any past sexual misdeeds. (*Id.* at p. 133.) Facing threat of a probation violation for invoking his right to remain silent, the probationer told his probation officer that he had committed a sexual offense against a minor and was charged with the offense. (*Ibid.*) Suppressing the admission, the Oregon court observed: "That is precisely the situation forbidden by *Murphy* … . If defendant had no choice other than to

disclose or face revocation of his probation, *Murphy* … hold[s] that any subsequent statement was made involuntary." (*Id*. at p. 138.)

In *United States v. Saechao* (2005) 418 F.3d 1073, the Ninth Circuit concluded that an Oregon condition requiring a probationer to " 'promptly and truthfully answer' all reasonable inquiries" or face revocation of probation was unconstitutional under *Murphy* because it took the " 'impermissible step' " of requiring the probationer to choose between exercising his right to remain silent or jeopardize his conditional liberty. (*Id*. at p. 1075). Like *Gaither*, *Saechao* upheld the trial court's order suppressing evidence obtained as a result of the probationer's incriminating responses. The majority distinguishes *Saecheo* based on that case involving use of a defendant's statement in a criminal proceeding. (Maj. Opn., p. 7.) But the posture of the case does not undermine the *Saecheo* court's conclusions that the defendant was compelled by threat of penalty to respond to his probation officer and that compulsion was unconstitutional. (*Id*. at p. 1081.)

The Ninth Circuit addressed another probation penalty situation in *United States v. Antelope* (2005) 395 F.3d 1128 (*Antelope*). The majority dismisses *Antelope* as irrelevant because it was not a facial challenge to a probation condition, as here. But *Antelope* illustrates the type of penalty discussed, although not found to be present, in *Murphy* and the impermissibly coercive effect of such a penalty in this context. In *Antelope*, the probationer refused to complete a sexual history autobiography and participate in a "full disclosure polygraph" as part of a sexual abuse recovery program unless he was granted immunity, even though he desired to continue in treatment. (*Id.* at pp. 1131–1132.) The district court revoked probation and imposed a prison sentence. (*Id*. at p. 1132.)

*Antelope* analyzed the probationer's Fifth Amendment claim under *McKune v. Lile* (2002) 536 U.S. 24 (*McKune*), a then recently decided Supreme Court case addressing a state prison inmate's privilege against self-incrimination in the context of the prison's sex offender treatment program. The treatment program in *McKune* required participants to

8

divulge all prior sexual activities regardless of whether they constituted uncharged criminal offenses.  (*Id.* at p. 30.)  Refusal to participate in the program would result in transfer to a maximum security housing unit and reduced privileges such as visitation, work opportunities, and television access.  Inmate Lile refused and asserted the privilege against self-incrimination.  (*Id*. at pp. 30–31.)

*McKune* was a fractured decision, with the plurality and Justice O'Connor agreeing that the alteration in the inmate's prison conditions did not amount to compulsion under the Fifth Amendment.  (*McKune*, *supra*, 536 U.S. at p. 29 [plurality]; *id*. at pp. 48–49 [O'Connor, J.].)  Although "not all pressure necessarily 'compels' incriminating statements" (*id*. at p. 49), Justice O'Connor recognized that a penalty involving longer incarceration would not be constitutionally permissible.  (*Id*. at p. 52.) Based on Justice O'Connor's view, *Antelope* concluded that the probationer's privilege against self-incrimination was violated because he suffered additional incarceration which amounted to a penalty for exercising his right to remain silent.  (*Antelope*, *supra*, 395 F.3d at p. 1138.)  *Antelope* concluded that the case presented the classic penalty situation contemplated in *Murphy*.  (*Id*. at p. 1138, fn. 4.)

The application of *Murphy*'s analysis in *Eccles*, *Gaither*, and *Saecheo*, and *Antelope*'s recognition that *Murphy* continues to set the standard for compulsion in probation penalty cases, lead me to conclude that the waiver required by Penal Code section 1203.067, subdivision (b)(3) violates the Fifth Amendment on its face.  I am not persuaded by the majority's view that such authorities do not apply here to the extent they involve probationers' compelled statements which are sought to be used against them in later prosecutions.  The fact that defendant challenges the subdivision (b)(3) waiver on its face rather than challenging the use of statements resulting from that waiver does not affect the import of *Murphy*.  The denial of probation for refusal to accept the mandated condition attaches an impermissible penalty to the exercise of the Fifth Amendment privilege against self-incrimination.

9

The majority concludes that the required waiver does not violate the Fifth Amendment "because the penalty exception will necessarily apply to statements that defendant makes in response to questions asked as part of the sex offender management program under the compulsion of the section 1203.067, subdivision (b)(3) probation condition." (Maj. Opn., p. 10.) This view ignores that the Fifth Amendment privileges a person not to answer questions posed in *other* proceedings (*Murphy, supra,* 465 U.S. at p. 426) and that the very purpose of the subdivision (b)(3) waiver is to deny defendant the privilege of not answering questions, including those where the answers might incriminate him. Requiring the waiver and then compelling answers creates blanket immunity for probationers to disclose crimes during their participation in the sex offender treatment program knowing that such disclosures, and their derivatives, cannot be used against them in criminal proceedings. (*Kastigar, supra,* 406 U.S. at p. 462 [evidence derived from compelled testimony cannot be used against a person in a criminal proceeding].) However with the waiver properly stricken from subdivision (b)(3), participants in the sex offender management program may choose whether to assert their right to remain silent, and issues of whether answers will be compelled, questions reformulated, immunity granted, or probation revoked can be addressed on a question by question and case by case basis.

I recognize that probation is a privilege not a right, and a defendant can refuse probation and accept a sentence if he views the conditions of probation as too harsh. (*People v. Bravo* (1987) 43 Cal.3d 600, 608.) But probation was a privilege long before *Murphy* was decided. (See *Burns v. United States* (1932) 287 U.S. 216, 220 [probation is a matter of favor conferred as a privilege]; *Kirsch v. United States* (8th Cir. 1949) 173 F.2d 652, 654 [probation is a matter of grace].) *Murphy*'s reasoning removes Fifth Amendment restrictions from the reach of probation conditions (*Murphy*, *supra*, 465 U.S. at p. 438 ["Our decisions have made clear that the State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment

10

privilege."]).  I do not reach whether the waiver is overbroad or otherwise unreasonable under *Lent*, *supra*, 15 Cal.3d 481, because in my view no narrowing of the condition would cure the Fifth Amendment infirmity.

## II.  PARTICIPATION IN POLYGRAPH EXAMINATIONS

### A.  The Requirement Does not Infringe on the Privilege Against Self-Incrimination

Relying primarily on *Antelope*, *supra*, 395 F.3d 1128, defendant argues that participation in a polygraph examination violates the Fifth Amendment because the questions are investigatory in nature.  *Antelope* did not hold that the sex abuse recovery program at issue in that case, or its polygraph component, violated the Fifth Amendment. Standing alone, the requirement that defendant participate in polygraph examinations does not infringe on his Fifth Amendment right against self-incrimination because it does not preclude him from exercising that right.  (*People v. Miller*, *supra*, 208 Cal.App.3d 1311, 1315.)

### B.  The Requirement is Construed as Imposing *Lent's* Reasonableness Limitations and is not Overbroad

Defendant challenges the requirement that he participate in polygraph examinations as overbroad and unreasonable.  Under *Lent*, *supra*, 15 Cal.3d 481, "a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality."  (*Id*. at p. 486.)  In *Brown v. Superior Court*, *supra*, 101 Cal.App.4th 313, the court addressed a stalking probationer's overbreadth challenge to a similar condition.  *Brown* held that mandatory polygraph testing as a condition of probation was reasonably related to the stalking conviction and to possible future criminality.  (*Id*. at p. 319.)  *Brown* also held that the probation condition must be narrowed under *Lent* to "limit the questions allowed to those relating to the successful completion of the stalking therapy program and the crime of which Brown was

11

convicted." (*Id*. at p. 321.)  As in *Brown*, the basic requirement that defendant participate in polygraph examinations comports with *Lent*, provided the questions posed to him are reasonably related to his successful completion of the sex offender management program, the crime of which he was convicted, or related criminal behavior, whether past or future. Because the language of subdivision (b)(3) mandates that participation in polygraph examinations be part of the sex offender management program, I would construe this condition as imposing the limitations required by *Lent* and *Brown*.  Specifically, I would construe the polygraph examination participation requirement as allowing only questions relating to the successful completion of the sex offender management program, to the crime of which defendant was convicted, and to future criminal behavior.  So construed, the condition is not overbroad and accords with *Lent*.

### III.  CONCLUSION

Because I find the waiver mandated by Penal Code section 1203.067, subdivision (b)(3) facially violates the Fifth Amendment, I would strike the words "Waiver of any privilege against self-incrimination and" from the subdivision.  With the offending language stricken, the subdivision would pose no Fifth Amendment infirmities. I would construe the polygraph examination participation requirement as allowing only questions relating to successful completion of the sex offender management program, to the crime of which defendant was convicted, and to future criminal behavior. Accordingly, I dissent from Section III.A of the majority opinion, and from the disposition to the extent it affirms imposition of a "waiver of any privilege against self-incrimination" as part of defendant's probation conditions.

_____

Grover, J.

12